No. _____

In the

# United States Court of Appeals
# for the Fifth Circuit

◆

IN RE SANDERSON FARMS, LLC
(PROCESSING DIVISION) D/B/A WAYNE-SANDERSON FARMS,

*Petitioner.*

◆

**From the United States District Court
for the Western District of Texas
Honorable Alan D. Albright, District Judge
6:23-cv-770-ADA-DTG**

## PETITION FOR WRIT OF MANDAMUS

R. Pepper Crutcher, Jr.
Balch & Bingham LLP
188 East Capitol St.
Suite 1400
Jackson, MS 39201
T: (601) 965-8158
pcrutcher@balch.com

Anne Harlan Latino
Balch & Bingham LLP
188 East Capitol St.
Suite 1400
Jackson, MS 39201
T: (601) 965-8163
alatino@balch.com

Claire D. Williams
Balch & Bingham LLP
188 East Capitol Street
Suite 1400
Jackson, MS 39201
T: (601) 965-8177
cdwilliams@balch.com

*Counsel for Petitioner Sanderson Farms, LLC*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 of the Rules and Internal Operating Procedures of the United States Court of Appeals for the Fifth Circuit, have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

1. Defendant / Petitioner – **Sanderson Farms, LLC (Processing Division) D/B/A Wayne-Sanderson Farms;**

2. Counsel for Defendant / Petitioner:

    R. Pepper Crutcher, Jr.
    Anne Harlan Latino
    Claire D. Williams
    Dane McKaughan
    BALCH & BINGHAM LLP
    188 East Capitol Street, Suite 1400
    Jackson, MS 39201
    Telephone: (601) 961-9900

3. Plaintiff / Respondent – **Adolf Arizpe;**

4. Counsel for Plaintiff / Respondent:

    Joel S. Shields
    Benjamin Yelverton
    Tyler Bass Talbert
    SCANES YELVERTON TALBERT, LLP
    100 Ritchie Road, Suite 101
    P.O. Box 20965
    Waco, TX 76702-0965
    Telephone: 254-399-8788

5.  District Judge – Honorable Alan D. Albright

6.  Originally Assigned, Magistrate Judge – Honorable Jeffrey C. Manske

7.  Magistrate Judge – Honorable Derek T. Gilliland

Dated: May 5, 2025.

*/s/ R. Pepper Crutcher, Jr.*
R. Pepper Crutcher, Jr.

Counsel for Sanderson Farms, LLC

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................1

RELIEF SOUGHT ................................................................................3

ISSUE PRESENTED .............................................................................5

DISTRICT COURT PROCEEDINGS ....................................................6

   I.   Nature and Posture of The Action ................................................6

   II.  The Privilege Waiver Dispute ......................................................6

   III. The Magistrate Judge's Order and District Court Affirmance.......................9

WHY THE WRIT SHOULD ISSUE......................................................9

   I.   Standard for Issuance..................................................................9

   II.  Sanderson Lacks Other Means of Relief ....................................10

   III. Sanderson's Mandamus Right Is Clear and Indisputable.............................11

       a.  Under Clear Fifth Circuit Precedent, Sanderson Did Not Waive Its Attorney-Client Privilege ...................................................12

       b.  Only Mr. Arizpe Put the Privileged Emails at Issue ................................15

       c.  Kelly Alejandro Lacked Authority to Waive Sanderson's Attorney-Client Privilege. .......................................................18

       d.  The Court Failed to Require the Plaintiff to Prove Waiver ....................20

       e.  The District Court Also Ignored Its Controlling Protective Order ..........22

       f.  Pleadings Cannot Be Amended by Deposition .........................23

   IV. Mandamus Propriety: Why Correct These Errors Now? .............................24

CONCLUSION ...................................................................................27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. F.B.I.*,
  198 F.R.D. 306 (D.D.C. 2000) ................................................................ 19

*Bakner v. Xerox Corp. Emp. Stock Ownership Plan*,
  2000 WL 33348191 (W.D. Tex. Aug. 28, 2000) .................................. 24

*Belcher v. Lopinto*,
  2019 WL 12094025 (E.D. La. Nov. 12, 2019) .................................... 21

*Bracamontes v. Geovera Specialty Ins.*,
  2024 WL 2880422 (E.D. La. June 7, 2024) ........................................ 19

*Butterworth v. Laboratory Corp. of American Holdings*,
  2010 WL 11470895 (M.D. Fla. Dec. 2, 2010) .................................... 17

*Carolina Aircraft Corp. v. American Mut. Liab. Ins. Co.*,
  517 F.2d 1076 (5th Cir. 1975) ............................................................ 26

*Commodity Futures Trading Comm'n v. Weintraub*,
  471 U.S. 343 (1985) ............................................................................ 18

*E.E.O.C. v. Freeman*,
  288 F.R.D. 92 (D. Md. 2012) .............................................................. 20

*Edwards v. KB Home*,
  2015 WL 4430998 (S.D. Tex. July 18, 2015) ............................... 13, 14

*EEOC v. BDO USA, L.L.P.*,
  876 F.3d 690 (5th Cir. 2017) .............................................................. 21

*Falchenberg v. New York Dep't of Educ.*,
  642 F. Supp. 2d 156 (S.D.N.Y. 2008) ................................................ 20

*Fleming v. Methodist Hosp.*,
  2023 WL 4307157 (W.D. Tex. June 30, 2023) .................................. 27

*Great W. Cas. Co. v. Deepwell Energy Servs., LLC*,
  2024 WL 4103369 (W.D. Tex. May 14, 2024) ................................... 23

*GXO Logistics Supply Chain, Inc. v. Young Living Essential Oils, LC*,
  2024 WL 4960008 (N.D. Miss. Dec. 3, 2024) .................................... 23

*Homeland Ins. Co. of New York v. Clinical Pathology Lab'ys, Inc.*,
  643 F. Supp. 3d 675 (W.D. Tex. 2022) ............................................... 22

*In re Application of Chevron Corp.*,
  736 F. Supp. 2d 773 (S.D.N.Y. 2010) ................................................ 18

*In re Avantel, S.A.*,
  343 F.3d 311 (5th Cir. 2003) .............................................................. 10

*In re Bounds*,
  443 B.R. 729 (W.D. Tex. 2010) ..................................................... 18, 21

*In re Dinnan*,
  625 F.2d 1146 (5th Cir. 1980)................................................................ 25

*In re Grand Jury Investigation*,
  610 F.2d 202 (5th Cir. 1980)................................................................. 25

*In re Grand Jury Subpoena*,
  274 F.3d 563 (5th Cir. 2001)............................................................ 18, 21

*In re Huffines Partners Retail, L.P.*,
  978 F.3d 128 (5th Cir. 2020)................................................................ 10

*In re Itron*,
  883 F.3d 553 (5th Cir. 2018).......................................................... Passim

*In re Schlumberger Tech. Corp.*,
  818 F. App'x 304 (5th Cir. 2020) .................................................... Passim

*In re U.S. Dep't of Homeland Sec.*,
  459 F.3d 565 (5th Cir. 2006)................................................................ 10

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008)................................................................ 11

*Jolivet v. Compass Group USA, Inc.*,
  340 F.R.D. 7 (N.D. Tex. 2021) ....................................................... 12, 21

*Klier v. Elf Atochem N. Am., Inc.*,
  658 F.3d 468 (5th Cir. 2011)................................................................ 12

*Koch v. Cox*,
  489 F.3d 384 (D.C. Cir. 2007) ............................................................ 26

*Lamar Fin.l Corp. v. Adams*,
  918 F.2d 564 (5th Cir.1990)................................................................ 25

*Lyn-Lea Travel Corp. v. Am. Airlines*,
  240 F.3d 1073 (5th Cir. 2000).............................................................. 25

*Matter of AKD Invs.*,
  79 F.4th 487 (5th Cir. 2023) ............................................................... 24

*McAfee v. State of Texas*,
  467 S.W.3d 622 (Tx. Ct. App. 2015).................................................... 20

*McKee v. PetSmart, Inc.*,
  71 F. Supp. 3d 439 (D. Del. 2014)....................................................... 13

*Mohawk Industries, Inc. v. Carpenter*,
  558 U.S. 100 (2009)................................................................ 3, 10, 25

*Navajo Nation v. Urban Outfitters, Inc.*,
  2016 WL 3475340 (D.N.M. Mar. 25, 2016)......................................... 17

*New Jersey v. Sprint Corp.*,
  258 F.R.D. 421 (D. Kan. 2009)........................................................... 17

*Parker v. Columbia Pictures Indus.*,
  204 F.3d 326 (2d Cir. 2000)................................................................ 24

*Petroleos Mexicanos v. Crawford Enters., Inc.*,
  826 F.2d 392 (5th Cir. 1987).................................................................. 25
*Puskarich BNSF Co. BNSF Co. v. Graham-white Mfg. Co.*,
  2022 WL 611276 (D. Wyo. Feb. 22, 2022) ........................................ 19
*Sims v. Blot*,
  534 F.3d 117 (2d Cir. 2008)................................................................. 26
*Sprague v. Thorn Am., Inc.*,
  129 F.3d 1355 (10th Cir. 1997)........................................................... 18
*Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*,
  912 F.3d 805 (5th Cir. 2019)............................................................... 24
*Sunoco Partners Mktg. and Terminals, LP v. U.S. Venture, Inc.*,
  2021 WL 4242368, (S.D. Tex. Jan. 15, 2021) .................................... 14
*United States ex rel. Mitchell v. CIT Bank, N.A.*,
  2021 WL 4439516 (E.D. Tex. Sept. 28, 2021) ................................... 13
*United States v. Chen*,
  99 F.3d 1495 (9th Cir.1996)................................................................ 19
*Upjohn Co. v. United States*,
  449 U.S. 383 (1981)...................................................................... 12, 22
*Ward v. Succession of Freeman*,
  854 F.2d 780 (5th Cir. 1998).......................................................... 15, 16
*Williams v. Spring / United Management Company*,
  464 F. Supp. 2d 1100 (D. Kan. 2006).................................... 15, 16, 17
*Willy v. Admin. Review Bd.*,
  423 F.3d 483 (5th Cir. 2005).......................................................... 13, 18

Statutes

28 U.S.C. § 1292(b) .................................................................... 10, 11
28 U.S.C. § 1651(a) .......................................................................... 10
29 U.S.C. § 2611 ................................................................................. 6
42 U.S.C. § 12101 ............................................................................... 6

Rules

Fed. R. Civ. P. 15 ............................................................................... 23
Fed. R. Civ. P. 16 ........................................................................ 23, 24
Fed. R. Civ. P. 26(b)(1)................................................................... 1, 12
Fed. R. Civ. P. 30(b)(6)............................................................ 5, 19, 20
Fed. R. Evid. 502 .............................................................................. 22

# INTRODUCTION

In a U.S. District Court civil action, a party is the master of its pleadings, and discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense …." FED. R. CIV. P. 26(b)(1). But not so much, under the Orders challenged in this Petition, for an employer that is entitled to plead a statutory good faith defense to liquidated damages. Until these rulings, each such employer had the option to preserve attorney-client confidences by pleading and litigating that defense based on facts other than legal advice reliance. Now, the employer's pleading and litigation strategy may be overridden, and its attorney-client privilege waived, if a local supervisor involved in the employee's termination testifies, in her individual witness deposition, that she relied on legal advice. The challenged Orders create for employers this Catch-22, acknowledged by the District Court here:

- Forego the defense;

- Forego legal advice; or,

- Admit the fact of advice and suffer compelled disclosure of its substance.

That is the law today in the Western District of Texas. It will remain the law unless and until this Court corrects the clear errors that produced this unjust result. The sooner the better, for two reasons, and not just for this case.

Entry of a defense summary judgment by the court below would moot this Petition.  Correction of this error then would await, perhaps for years, the next appellate review opportunity.  Meanwhile, this error wouldn't just smolder in West Texas isolation; it would spread.  Inevitably, a claimant who tried to preserve her doctor-patient privilege by foregoing emotional distress claims will be ordered to disclose her medical and psychotherapy records because she admitted in her deposition related stress and depression.  All the arguments that Plaintiff makes here would be made against her, too.  This clear, serious error should be nipped in the bud.

# **RELIEF SOUGHT**

Sanderson Farms, LLC petitions the Court to protect Sanderson's confidential attorney-client communications from compelled disclosure by remanding this action to the United States District Court for the Western District of Texas with directions to –

A. Vacate these Orders entered by the District Court in the civil action styled *Adolf Arizpe v. Sanderson Farms, LLC*, W. D. Tex. No. 6:23-CV-770:

   1. Order (*see* MR-219–225)[1] entered December 9, 2024, granting Plaintiff's Motion to Compel Discovery (MR-27–78) filed October 31, 2024;

   2. Order Affirming Magistrate Judge's Order (MR-296–297), entered April 15, 2025; and,

B. Deny entirely the Plaintiff's Motion to Compel Discovery (MR-27–78), filed October 31, 2024.

Consistent with *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009) and *In re Itron*, 883 F.3d 553 (5th Cir. 2018), Sanderson has, before filing this Petition, exhausted all other options for relief from these clearly erroneous and prejudicial Orders, the District Court having denied on April 30, 2025 Sanderson's April 23 motion for reconsideration or for interlocutory appeal certification (MR-343). The District Court also denied on April 30 Sanderson's April 23 Expedited Motion to Stay (MR-344) proceedings pending appellate review. On May 1 the

---

[1] Citations in the form of "MR__" refer to pages in the Record in Support of Petition for Writ of Mandamus filed herewith.

District Court granted a brief stay of enforcement of the challenged Order until May 7 to allow time for this Petition. (MR-357).

## <u>ISSUE PRESENTED</u>

With respect to a FMLA good faith liquidated damages defense that pretermitted legal advice reliance as a basis for the defense, did the District Court clearly and indisputably err in ruling that an individual deponent, neither a corporate officer nor a Rule 30(b)(6) representative, waived Sanderson's otherwise applicable attorney-client privilege by answering that she relied upon legal advice regarding Plaintiff's employment termination?

## DISTRICT COURT PROCEEDINGS

### I.     Nature and Posture of The Action

The Complaint (MR-1–9) accuses Sanderson Farms of firing poultry plant supervisor Adolf Arizpe on March 1, 2023, due to his knee surgery and related leave, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., and the Family and Medical Leave Act, 29 U.S.C. § 2611 *et seq*.

Sanderson says that it fired Mr. Arizpe based on an unsolicited report from Mrs. Arizpe that Mr. Arizpe, while on paid FMLA leave, was working in his side business, in violation of Sanderson policy.  Mrs. Arizpe provided supporting photos and videos of Mr. Arizpe taking trips to casinos, dancing, climbing ladders to hang Christmas lights on his roof, digging holes, and climbing into the back of a pickup truck with party supplies for his side business – all while professing inability to even do office work for Sanderson. (MR-87–94).

Jury trial is set to begin June 2, in Waco, Texas, unless the District Court grants the summary judgment motion (MR-260–95) that Sanderson filed February 6, 2025.

### II.     The Privilege Waiver Dispute

Sanderson's Answer (MR-10–16) interposed this Fifth Affirmative Defense:

FMLA liquidated damages are unavailable because Defendant acted in good faith; in compliance with applicable provisions of law, rules and regulations; and without retaliatory or discriminatory intent.

Sanderson's FMLA policy provided:

> It is Company policy that employees taking leave under this policy for their own serious health condition are prohibited from working for other employers or engaging in any other kind of compensable employment (self-employment; independent contracting). **Violation of this policy will result in termination of employment.** Employees found to have fraudulently sought or obtained FMLA leave will be terminated.

(MR-99). Based on Mrs. Arizpe's evidence, Sanderson asserted a good faith belief that Plaintiff violated this policy.

Answering Plaintiff's Interrogatory #4 seeking the factual basis for its affirmative defenses, Sanderson said, in relevant part: "The factual basis for Sanderson's good faith defense and its protection from punitive damages can be found in its FMLA and ADA policies." (MR-36). In response to Request for Production #31 requesting all documents related to the good faith defense to FMLA liquidated damages, Sanderson referenced its FMLA policies and Plaintiff's medical file (MR-62–63). Sanderson consistently and exclusively supported its good faith defense to FMLA liquidated damages with references to its FMLA policy and the application of that policy to Mr. Arizpe's behavior.

In October 2024, Plaintiff deposed Waco plant HR Supervisor Kelly Alejandro, individually, and not as a Rule 30(b)(6) representative. Ms. Alejandro was asked pointed questions about Sanderson's privilege log (MR-69–77), eliciting

attorney-client privilege objections. (MR-51–52).     She then was asked about

Sanderson's good faith affirmative defense to FMLA liquidated damages:

> Q:  Deposition Exhibit 6 is a copy of Sanderson Farms' live answer in this matter. And, Ms. Alejandro, I'm not – **I'm not expecting you to know all the legal jargon in here**, but I do want to ask you one question about it.
>
> A: Uh-huh.
>
> Q:  If you look at the second page under the Fifth Affirmative Defense –
>
> A:  Okay.
>
> Q. – it says, "FMLA liquidated damages are unavailable because Defendant acted in good faith; in compliance with applicable provisions of law, rules, and regulations; and without retaliatory or discriminatory intent." Did I read that correctly?
>
> A. Yes.
>
> Q. Is it your testimony that Sanderson Farms acted in good faith when terminating Mr. Arizpe?
>
> A. Yes.
>
> Q. Okay. And it says here that the reason why is because they applied with provisions of law, rules, and regulations. Who do you depend on to tell you who the laws, rules, and regulations are?
>
> A. Our legal team.

(MR-53–54) (emphasis added).   Plaintiff's counsel followed up with:

> Q: Got it. All right. So is there any other document, conversation, communication, any other fact that you are basing your statement on that Sanderson Farms acted in good faith when it terminated Mr. Arizpe other than those emails?
>
> A: Not that I can think of.

(MR-55).

On October 31, 2024, Plaintiff filed his Motion (MR-27–78) to compel Sanderson to produce privilege-logged records of termination-related attorney-client communications, said to be relevant to Sanderson's good faith defense, asserting that Ms. Alejandro waived Sanderson's attorney-client privilege.

### III.    The Magistrate Judge's Order and District Court Affirmance

Despite finding that Sanderson pled and litigated its Fifth Affirmative Defense to preclude Sanderson's reliance on legal advice, the Magistrate Judge granted Plaintiff's Motion (MR-219–25), reasoning that Ms. Alejandro's testimony waived the privilege and that the emails were relevant to the good faith defense. Sanderson filed timely objections (MR-226–43) but the District Judge affirmed the Magistrate's Order (MR-296–97), without any expressed analysis of any of Sanderson's objections.  The District Judge also summarily denied (MR-343) Sanderson's Motion for Reconsideration, or in the alternative, for Certification of Interlocutory Appeal (MF-298–311).

### WHY THE WRIT SHOULD ISSUE

### I.    Standard for Issuance

The All Writs Act authorizes courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of

law." 28 U.S.C. § 1651(a). Because mandamus is an extraordinary remedy, writs are reserved for extraordinary situations such as errant orders compelling production of privileged documents. *See, e.g.*, *In re Avantel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003). Mandamus is a "useful safety valve[] for promptly correcting serious errors," and is appropriate when a district court's ruling "amount[s] to a judicial usurpation of power or a clear abuse of discretion, or otherwise works a manifest injustice." *Mohawk Indus.*, 558 U.S. at 111 (quotation marks omitted).

When a writ is sought, this Court considers whether (1) the petitioner has no other adequate means of obtaining its desired relief; (2) the right to a writ is clear and indisputable; and (3) issuance of the writ is appropriate under the circumstances. *In re Huffines Partners Retail, L.P.*, 978 F.3d 128, 131 (5th Cir. 2020). All are true here. *See In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 568 (5th Cir. 2006) ("Mandamus is appropriate if the district court errs in ordering the discovery of privileged documents, as such an order would not be reviewable on appeal.").

## II. Sanderson Lacks Other Means of Relief

*Itron* explained how to demonstrate that mandamus is the only path to relief:

> Itron has been challenging that order ever since. It first lodged objections with the district court, but the district court overruled them on the ground that the magistrate judge's ruling was "not clearly erroneous." Itron then moved the district court for reconsideration, or, in the alternative, to certify the magistrate judge's order for interlocutory appeal. *See* 28 U.S.C. § 1292(b). Both motions were

denied. Running up against the production deadline, Itron petitioned us
for review.

883 F.3d at 557. "Given that Itron exhausted every other opportunity for
interlocutory review of the magistrate judge's order compelling production,
including a motion to certify an interlocutory appeal under 28 U.S.C. § 1292(b), we
find this first prong met." *Id*. at 568; *see also In re Schlumberger Tech. Corp.*, 818
F. App'x 304, 306 (5th Cir. 2020) (finding the first mandamus prong met "[b]ecause
the district court denied STC's motion to certify an interlocutory appeal, mandamus
is its only means of protecting the privilege.").

Sanderson has contested the Magistrate Judge's Order (MR-219–25) since its
issuance. The District Court summarily denied Sanderson's Objections (MR-226–
43) without expressed analysis (MR-296–97). Sanderson then sought
reconsideration or, alternatively, certification for interlocutory appeal (MR-298–
311). The District Court also denied that motion without substantive analysis (MR-
343). Out of options and approaching the document production deadline, Sanderson
filed this Petition, satisfying the threshold requirement for mandamus relief.

**III.   Sanderson's Mandamus Right Is Clear and Indisputable**

The "right to the issuance of the writ is necessarily clear and indisputable" if
"the district court clearly abused its discretion." *Itron*, 883 F.3d at 568 (quoting *In
re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc)). "By
definition, a district court abuses its discretion when it makes an error of law or

applies an incorrect legal standard." *Id.* (quoting *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011)).

### a. Under Clear Fifth Circuit Precedent, Sanderson Did Not Waive Its Attorney-Client Privilege

"Parties may obtain discovery regarding any **nonprivileged** matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1) (emphasis added). The attorney-client privilege serves to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). This privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Id.* Notably,

> relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, ... even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue. Attorney/client documents may be quite helpful [to an adversary's argument], but this is not a sufficient basis for abrogating the privilege.

*Jolivet v. Compass Group USA, Inc.*, 340 F.R.D. 7, 29 (N.D. Tex. 2021) (quoting *Itron*, 883 F.3d at 561).

In *Itron*, this Court held that asserting a claim to which privileged material is merely <u>relevant</u> does not waive the attorney-client privilege. Rather, the Court explained:

> a client waives the privilege by affirmatively relying on attorney-client communications to support an element of a legal claim or defense—thereby putting those communications "at issue" in the case. … "In other words, when a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005).

883 F.3d at 558 (internal citations omitted). The Court noted "the many dozens of cases finding no waiver when no such reliance [on an attorney's advice as an element of a claim or defense] has occurred." *Id*. at n.4.

> *Schlumberger* revisited this issue. There,

> STC's answer claimed only that it relied in good faith "on applicable law, administrative regulations, orders, interpretations and/or administrative practice or policy enforcement." STC did not claim that counsel advised it that its decisions complied with the FLSA. Indeed, its answer did not allude to advice of counsel at all. While privileged communications may have some bearing on STC's beliefs about its compliance, STC has not "rel[ied] on attorney-client communications" to establish its good-faith defense. 883 F.3d at 558; *accord McKee v. PetSmart, Inc.*, 71 F. Supp. 3d 439, 443 (D. Del. 2014) (no waiver of privilege by invoking FLSA good-faith defense).

818 F. App'x at 307–8. *See also United States ex rel. Mitchell v. CIT Bank, N.A.*, No. 4:14-CV-00833, 2021 WL 4439516, at *8 (E.D. Tex. Sept. 28, 2021) ("waiver occurs only where a party affirmatively relies on a communication over which it claims privilege to establish the party's claim or defense").

Although Plaintiff's Motion to Compel and his Opposition to Sanderson's reconsideration motion leaned hard on a 2015 unreported opinion, *Edwards v. KB*

*Home*, No. 3:11–CV–00240, 2015 WL 4430998 (S.D. Tex. July 18, 2015), this

Court has explained that:

> *Edwards* predates *Itron* and is, in any event, distinguishable. In *Edwards*, the defendant affirmatively conceded it had relied on the advice of counsel to make its classification decisions. Here, STC made no such concession and instead tailored its pleading so as not to rely on privileged communications.

*Schlumberger*, 818 F. App'x at 308.     *See also, Sunoco Partners Mktg. and*

*Terminals, LP v. U.S. Venture, Inc.*, 4:19-CV-1145, 2021 WL 4242368, at *3 n.3

(S.D. Tex. Jan. 15, 2021) (observing that *Edwards* was called into question by

*Schlumberger*).

Sanderson has not affirmatively relied on any privileged information to

support its Fifth Affirmative Defense; it has relied neither on advice of counsel nor

on privilege log emails.  Sanderson's Answer states that "it acted in good faith; in

compliance with applicable provisions of law, rules, and regulations."  (MR-11).

The Answer does not allude to advice of counsel.  *See Schlumberger*, 818 F. App'x

at 307.  In response to a Request for Production about this affirmative defense (MR-

62–63), Sanderson produced Plaintiff Adolf Arizpe's medical file from his

employment (MR-104–214) and Sanderson's Policy on Leaves for Salaried

Employees (MR-95–103).  In response to an Interrogatory about this affirmative

defense (MR-36), Sanderson stated that the factual basis for its good faith defense

can be found in its FMLA policy (MR-95–103).  Sanderson has never pled or

litigated reliance on legal advice to support this defense, did not put the emails on the privilege log "at issue" in the case, and did not waive its privilege to keep the attorney-client emails confidential.

### b. Only Mr. Arizpe Put the Privileged Emails at Issue

The District Court's waiver holding "does not square with traditional notions of when a party acts *voluntarily* in introducing privileged matter so as to waive the privilege." *Ward v. Succession of Freeman*, 854 F.2d 780, 787 (5th Cir. 1998) (emphasis in original). "The issue that controls our inquiry is whether the defendants *voluntarily* injected a reliance-on-advice-of-counsel issue into the trial." *Id*. at 788. (emphasis in original).

*Williams v. Spring / United Management Company* is an employment case that is directly on point. 464 F. Supp. 2d 1100, 1107 (D. Kan. 2006). There, plaintiffs asserted that the defendant waived privilege because of its good faith defense and because of a witness's deposition testimony about reliance on the advice of counsel. The defendant's position there is almost identical to Sanderson's position here:

> As explained by defendant, it asserted its "good faith" in its answer to plaintiffs' revised second amended complaint only to negate plaintiffs' claims that defendant committed willful violations of the ADEA. Defendant asserts that it does not intend to rely on the adverse impact analyses or the advice of counsel in support of its "good faith" defense. Rather, defendant intends to rely on its anti-discrimination policies, the training that its employees received concerning those anti-discrimination policies and certain "due diligence" conducted by its Human Resources managers in reviewing RIF selection decisions to

ensure that those decisions were justified by legitimate, nondiscriminatory reasons.

*Id.* at 1103. "There is no indication that defendant is intending to rely on these e-mails to prove its good faith defense. Rather, defendant is relying on its employees' knowledge of defendant's policies concerning nondiscrimination and the effectiveness of those policies." *Id.* at 1106. The defendant will "tout its good faith compliance with the ADEA [or the FMLA] and the effectiveness of its policies … without reference to consultation with counsel." *Id.* at 1107. The same is true here. Sanderson has not relied, and will not rely, on advice of counsel to support its good faith defense to FMLA liquidated damages. Like the defendant in *Williams*, Sanderson intends to rely on its FMLA policies, Plaintiff's medical file, and the evidence received from Mrs. Arizpe to support its affirmative defense. (MR-87– 214).

Ms. Alejandro simply answered, as best she could, individually, bait questions from Plaintiff's counsel. As in *Williams*, "the testimony concerning reliance on counsel was elicited by plaintiffs' counsel in response to pointed questions from plaintiffs' counsel concerning adverse impact analyses." *Williams*, 464 F. Supp. 2d at 1114. *Williams* cited to and relied upon the this Court's *Ward* opinion, *supra*, to find no waiver of the attorney-client privilege:

> [T]he record before the court indicates that defendant's witnesses did not "voluntarily" raise the advice-of-counsel issue; they raised it only in response to direct questions from plaintiffs' counsel concerning

privileged communications … the testimony of these witnesses does not indicate that defendant intends to use advice of counsel to justify any conduct on its part. …

For the foregoing reasons, the court concludes that defendant has not waived the privilege by virtue of the deposition testimony of its witnesses.

*Id*. at 1116.

Similarly, in *Butterworth v. Laboratory Corp. of American Holdings*,

when asked certain questions by Plaintiff's counsel, Mr. Farrell referenced during his deposition that he consulted with in-house counsel. However, Defendant has not relied on, and does not intend to rely on, Mr. Farrell's deposition testimony referencing his conversations with in-house counsel to prove Defendant acted in good faith in its compliance with Title VII. … In other words, Defendant's assertion of good faith in its affirmative defense is separate and apart from the advice it received from counsel.

No. 3:08-cv-411-J-34JRK, 2010 WL 11470895, at *6 (M.D. Fla. Dec. 2, 2010). *See also Navajo Nation v. Urban Outfitters, Inc.*, No. 12-cv-0195, 2016 WL 3475340, at *3 (D.N.M. Mar. 25, 2016) ("This deposition testimony, however, was in response to *Plaintiffs'* counsel's questioning of the deposition witness, which does not constitute a voluntary assertion of the defense"); *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 432 (D. Kan. 2009) ("defendants have not impliedly waived the attorney-client privilege by placing advice of counsel at issue through the above-cited deposition testimony. As in *Williams*, the testimony was elicited by the lead plaintiff's counsel during the depositions").

This Court agreed in *Schlumberger*:

17

We also reject Plaintiffs' argument that STC waived the privilege simply by allowing Hanley to testify about the compliance reviews. To comply with plaintiffs' discovery requests, STC was required to identify, and thus make available for deposition, persons involved in its consultations. *See, e.g., In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 783–84 (S.D.N.Y. 2010). **Responding to that request does not amount to "us[ing] confidential information against his adversary," such that STC "implicitly waives its use protectively."** *Willy*, 423 F.3d at 497.

818 F. App'x at 308 (emphasis added).

Sanderson's pleading and discovery responses estop it to rely on legal advice to support its good faith defense. Sanderson may rely solely on its FMLA policies, Mr. Arizpe's medical file, and the evidence received from Mrs. Arizpe. (MR-87-214). There was no privilege waiver, as a clear matter of Fifth Circuit law.

### c. Kelly Alejandro Lacked Authority to Waive Sanderson's Attorney-Client Privilege.

Authority to waive a corporation's attorney-client privilege typically rests with individuals who have managerial or controlling authority, such as officers, directors, or those vested with decision-making power. *See In re Grand Jury Subpoena*, 274 F.3d 563 (5th Cir. 2001) (waiver decisions are generally made by those with authority to manage corporate affairs). "The power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *In re Bounds*, 443 B.R. 729, 733 (W.D. Tex. 2010) (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985)). *See also Sprague v. Thorn Am., Inc.*, 129 F.3d 1355, 1371 (10th Cir.

1997) (quoting *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir.1996)) ("a corporate employee cannot waive the corporation's privilege"); *Alexander v. F.B.I.*, 198 F.R.D. 306, 315–16 (D.D.C. 2000) (Lower level corporate employee's unauthorized disclosure of confidential communications with corporate counsel to third parties does not waive corporation's attorney-client privilege in such communications; power to waive corporate attorney-client privilege rests solely with corporation's management). Kelly Alejandro is not, and has never been, a Sanderson officer or director.

It is questionable whether Rule 30(b)(6) even requires a defendant to submit a witness for examination about its affirmative defenses. *See Puskarich BNSF Co. BNSF Co. v. Graham-white Mfg. Co.*, No. 19-CV-150-F, 2022 WL 611276, at *6 (D. Wyo. Feb. 22, 2022) (denying motion to compel 30(b)(6) deponent designation because "Plaintiff is seeking to conduct a Rule 30(b)(6) deposition to bind Defendant regarding its factual contentions and legal positions regarding its asserted affirmative defenses."). Ms. Alejandro testified only in her individual capacity, undercutting Plaintiff's contention here. (MR-215–16).

"[T]estimony in response to questions beyond the scope of the [30(b)(6)] notice [or where there is no 30(b)(6) notice] constitutes the testimony of the deponent *in an individual capacity* and not on behalf of his organization." *Bracamontes v. Geovera Specialty Ins.*, No. 23-1593, 2024 WL 2880422, at *4 (E.D. La. June 7,

19

2024) (emphasis in original) (citing *Falchenberg v. New York Dep't of Educ.*, 642 F. Supp. 2d 156, 165 (S.D.N.Y. 2008) ("Questions and answers exceeding the scope of the 30(b)(6) notice will not bind the corporation, but are merely treated as the answers of the individual deponent"); *E.E.O.C. v. Freeman*, 288 F.R.D. 92, 99 (D. Md. 2012) ("The deponent's answers to questions outside the scope of the notice will not bind the organization, and the organization cannot be penalized if the deponent does not know the answer"). Kelly Alejandro was not a Rule 30(b)(6) witness for Sanderson, so she was not a source of reliable testimony beyond her personal knowledge. Plaintiff's counsel expressly conceded that limitation, saying, in advance of his affirmative defense questions –

> Deposition Exhibit 6 is a copy of Sanderson Farms' live answer in this matter. And, Ms. Alejandro, I'm not -- **I'm not expecting you to know all the legal jargon in here**, but I do want to ask you one question about it.

(MR-53) (emphasis added). For the same reason, Ms. Alejandro's inability to think, in the moment, of the grounds that Sanderson had pled for its good faith defense did not operate to amend Sanderson's pleading or waive its privilege.

### d. The Court Failed to Require the Plaintiff to Prove Waiver

Plaintiff properly had the threshold burden to show Ms. Alejandro's authority to waive Sanderson's privilege. *See McAfee v. State of Texas*, 467 S.W.3d 622, 643 (Tx. Ct. App. 2015) ("once the privilege has been established, the party seeking to establish waiver of the privilege has the burden of going forward with evidence that

supports a finding of waiver"). But no such attempt was made. That lack of evidentiary foundation should have been dispositive, but, as noted in Sanderson's second Objection (MR-238-239), the District Court overlooked this issue. Ms. Alejandro's mere involvement in the contested termination does not suffice under Fifth Circuit precedent, *see, e.g., In re Grand Jury Subpoena; In re Bounds; supra*, and Plaintiff offered nothing else.

"Once the [attorney-client] privilege has been established, the burden shifts to the other party to prove any applicable exceptions." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017). Noting that "Arizpe does not argue that the emails do not constitute attorney-client privilege," (MR-221), the Magistrate, and later the District Judge, should have required Plaintiff to prove the claimed waiver. *See Jolivet*, 340 F.R.D. at 27 ("the attorney-client privilege is unmistakably applicable here, and Plaintiff has not established any exception thereto"); *Belcher v. Lopinto*, No. 18-7368, 2019 WL 12094025, *3 (E.D. La. Nov. 12, 2019) ("Because defendant has satisfied its evidentiary burden of establishing attorney-client privilege and work product protection, the burden shifts back to plaintiffs, the parties seeking discovery, to establish that the materials are nevertheless discoverable; for example, by proving waiver of the privilege"). The District Court's failure to shift the burden of proof to the Plaintiff was a clear and indisputable error.

The Magistrate appreciated the adverse consequences of his conclusion:

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "These benefits dissipate if clients are not free from the consequences or the apprehension that a court might order their confidential communications involuntarily disclosed." *[In re] Schlumberger*, 818 F. App'x [304], 308 [5th Cir. 2020] (internal citations omitted). **The Court acknowledges that denying the privilege in FMLA cases may discourage employers from seeking legal input in making termination decisions**. *See id.*

(MR-224–25) (emphasis added).  "[W]aiver of a privilege should not lightly be found because privileges represent society's desire to protect certain relationships." *Homeland Ins. Co. of New York v. Clinical Pathology Lab'ys, Inc.*, 643 F. Supp. 3d 675, 684 (W.D. Tex. 2022).  Mr. Arizpe should have borne a heavy burden to prove waiver, but the court saddled him with none.

### e.  The District Court Also Ignored Its Controlling Protective Order

Paragraph 18 of the Court's Confidentiality and Protective Order (MR-17–23) states: "Pursuant to Federal Rule of Evidence 502, neither the attorney-client privilege nor work-product protection is waived by disclosure connected with this litigation."  According to Federal Rule of Evidence 502:

(d) **Controlling Effect of a Court Order**. A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court — in which event the disclosure is also not a waiver in any other federal or state proceeding.

FED. R. EVID. 502(d). Consistent with Rule 502(d) and pursuant to the Confidentiality and Protective Order (MR-17–23), the attorney-client privilege

could not be waived in this case by disclosure. *GXO Logistics Supply Chain, Inc. v. Young Living Essential Oils, LC*, No. 3:23-CV-61-SA-RP, 2024 WL 4960008, at *3 (N.D. Miss. Dec. 3, 2024) ("the plain, unambiguous language of the CMO's non-waiver provision" "protects against waiver resulting from *any* disclosure made in connection with this litigation") (emphasis in original).  Neither the Plaintiff nor the District Court tried to reconcile the Motion to Compel or the contested Orders with the Court's controlling Protective Order, perhaps because they are irreconcilable.

## f.  Pleadings Cannot Be Amended by Deposition

Here again, the District Court failed to express any specific disagreement with Sanderson's argument. The Court's Scheduling Order (MR-24–26) required all amendment motions to be filed by March 8, 2024.

> "When a trial court imposes a scheduling order, Federal Rules of Civil Procedure 15 and 16 operate together to govern the amendment of pleadings." Rule 15 provides the procedure to amend a pleading before the scheduling order's deadline to amend passes. Rule 16 provides the procedure to amend a pleading after the deadline passes. In this latter scenario, a court must determine good cause under Rule 16(b) and then turn to the more liberal standard of Rule 15(a).
>
>  A court's scheduling order may be modified under Rule 16(b)(4) "only for good cause and with the judge's consent."

*Great W. Cas. Co. v. Deepwell Energy Servs., LLC*, No. MO:21-CV-00207-DC, 2024 WL 4103369, at *4 (W.D. Tex. May 14, 2024) (internal citations and footnotes omitted).

Rule 16(b) is "designed to offer a measure of certainty in pretrial proceedings,

ensuring that 'at some point both the parties and the pleadings will be fixed.'" *Bakner v. Xerox Corp. Emp. Stock Ownership Plan*, No. SA-98-CA-0230-OG, 2000 WL 33348191, at *13 (W.D. Tex. Aug. 28, 2000) (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)). "A scheduling order 'may be modified only for good cause.'" *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 819 (5th Cir. 2019) (citing FED. R. CIV. P. 16(b)(4)).

The Magistrate's Order held (MR-222) (citing *Schlumberger*) that the Fifth Affirmative Defense excluded Sanderson's reliance on legal advice. Mr. Arizpe has not contested that legal conclusion, so it is the law of the case. *See Matter of AKD Invs.*, 79 F.4th 487, 491 (5th Cir. 2023). There is no Rule, nor was there any prior order of this Court, permitting Sanderson to amend an affirmative defense by deposition testimony, or otherwise after the amendment deadline. Consequently, as a matter of law, the cited deposition testimony could not have altered and did not alter Sanderson's Fifth Affirmative Defense.

## IV.    Mandamus Propriety: Why Correct These Errors Now?

In *Itron*, this Court was "satisfied that correcting this error is a proper exercise of our discretion. We rest our decision primarily on the issue's 'importance beyond the immediate case.'" 883 F.3d at 568. "In light of the weighty interests served by the attorney-client privilege, we follow the other circuits who have employed mandamus to correct this precise error." *Id. See also Schlumberger*, 818 F. App'x

24

at 308 (mandamus was appropriate under the circumstances to protect the attorney-client privilege).

Plaintiff rightly says (MR-321) that Sanderson could preserve its privilege by surrendering its liquidated damages defense.  Or, Plaintiff could abandon his liquidated damages claim.  Neither is, or should be, required.  Rather, the District Court's errors should be corrected, and this Petition presents the best opportunity for correction, for two reasons, one pertaining only to this case and the other a concern for intra-District conflict and intra-Circuit turmoil.

Unless this Court grants this Petition, Sanderson will have just two options to preserve its attorney-client privilege: (1) refuse to comply with the email disclosure Orders, risking contempt[2] sanctions; or (2) avoid that risk by withdrawing its Fifth Affirmative Defense.  *See Mohawk*, 558 U.S. at 110–112.  Appeal of contempt sanctions would create worse trial delay than attends this Petition, beginning closer to trial, wasting more pretrial effort and expense.  Compelled surrender of the defense would avoid that delay and expense but would be appealable only if the Plaintiff should recover FMLA liquidated damages at trial, which seems highly

---

[2] Appeal routes for civil and criminal contempt sanctions differ.  *See In re Dinnan*, 625 F.2d 1146, 1150 (5th Cir. 1980); *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 398 (5th Cir. 1987); *In re Grand Jury Investigation*, 610 F.2d 202 (5th Cir. 1980); *Lyn-Lea Travel Corp. v. Am. Airlines*, 240 F.3d 1073 (5th Cir. 2000); *Lamar Fin.l Corp. v. Adams*, 918 F.2d 564 (5th Cir.1990) (civil contempt order appealable because it functioned as a criminal contempt order).

unlikely for the reasons explained in Sanderson's pending summary judgment motion (MR-260–95).

Litigants with incentives to do so will exploit the District Court's errors until they are corrected, creating an intra-District conflict and intra-Circuit turmoil, because the District Court's reasoning is not limited to affirmative defenses and cannot be logically cabined. As this Court recognized in *Schlumberger*,

> As STC points out, denying the privilege in FLSA cases may discourage employers from seeking legal input in classifying employees. If the district court's "view of the law were to proliferate, more district courts could mistakenly find waiver" under these circumstances. *Itron*, 883 F.3d at 568.

818 F. App'x at 308.

If a civil defendant is not master of its pleadings, *Carolina Aircraft Corp. v. American Mut. Liab. Ins. Co.*, 517 F.2d 1076, 1077 (5th Cir. 1975), and if individual deponent testimony may over-write defense pleadings, then claimants will be subject to the same rule. An employment claimant will be unable to preserve her medical and psychotherapy privileges by foregoing emotional distress damages typically sought in discrimination and retaliation cases, if she confesses in her deposition that she suffered related distress. That errant legal reasoning has been rejected by other Circuit Courts of Appeal. *See Koch v. Cox*, 489 F.3d 384, 391 (D.C. Cir. 2007); *Sims v. Blot*, 534 F.3d 117, 138–42 (2d Cir. 2008). Indeed, the Western District of Texas permits claimants to preserve psychotherapy confidentiality even when they seek

"garden variety" emotional distress damages. *See Fleming v. Methodist Hosp.*, No. SA-21-CV-01234-XR, 2023 WL 4307157, at *2 (W.D. Tex. June 30, 2023). One of the District's two polar positions must yield to the other and that hashing-out is unlikely to be confined to that District. It will spread throughout the Circuit, producing interlocutory appeals, mandamus petitions and final judgment appeals until this Circuit joins its sisters in correcting the underlying legal errors. *See, e.g., Itron*, 883 F.3d at 568 ("For example, waiver could become near automatic in any case touching on the plaintiff's knowledge or state of mind—unjustifiably eliminating the privilege in a substantial swath of cases").

## CONCLUSION

This is a classic case for mandamus relief. The District Court's errors are serious, clear and highly prejudicial. This Petition is Sanderson's last best option for meaningful relief. Failure to grant the Petition reasonably may be expected to harm not just Sanderson, but the administration of civil justice within this Circuit for the indefinite future.

Respectfully submitted, this the 5th day of May, 2025.

/s/ R. Pepper Crutcher, Jr.
R. Pepper Crutcher, Jr.
Texas Bar No. 24063138
Anne Harlan Latino
MS Bar No. 102807
Claire D. Williams
MS Bar No. 106001

Balch & Bingham LLP
188 E. Capitol Street, Ste 1400
Jackson, Mississippi 39201
Telephone: (601) 965-8158
Facsimile: (888) 254-2607
Email: pcrutcher@balch.com
Email: alatino@balch.com
Email: cdwilliams@balch.com

**COUNSEL FOR PETITIONER
SANDERSON FARMS, LLC**

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of FED. R. APP. P. 21(d)(1) because:

   ☒      this brief contains 7,292 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

   ☒      this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 with Times New Roman 14 font.

Dated: May 5, 2025.

                              */s/ R. Pepper Crutcher, Jr.*
                              R. Pepper Crutcher, Jr.

                              Counsel for Sanderson Farms, LLC

## **CERTIFICATE OF SERVICE**

I, the undersigned counsel, do hereby certify that I electronically filed the foregoing with the Clerk of the Court, served the parties via email, and filed a copy in the district court case which sent notification of such filing to the following counsel of record:

Joel S. Shields
Benjamin Yelverton
Tyler Bass Talbert
Scanes Yelverton Talbert, LLP
100 Ritchie Road, Suite 101
P.O. Box 20965
Waco, TX 76702-0965
Telephone: 254-399-8788
Email: shields@sytfirm.com
Email: yelverton@sytfirm.com
Email: talbert@sytfirm.com

Counsel for Plaintiff / Respondent

Honorable District Judge Alan Albright
Western District of Texas, Waco Division
800 Franklin Avenue, Room 301
Waco, TX 76701
Email: TXWDml_LawClerks_JudgeAlbright@txwd.uscourts.gov

Dated: May 5, 2025.

*/s/ R. Pepper Crutcher, Jr.*
R. Pepper Crutcher, Jr.

Counsel for Sanderson Farms, LLC

24849549.8